R. R. PERRY *et al.* Appellees, *vs.* W. B. ELLIOTT *et al.* Appellants.

*Opinion filed February 21, 1914.*

1. DEEDS—*proof must be clear to authorize reforming a deed for mutual mistake.* In order to justify a court of equity in reforming a deed the evidence must be strong and convincing that there was a mutual mistake of the parties in the respect alleged in the bill.

2. SAME—*what does not justify reforming deed.* A deed describing a tract of land one hundred feet square by metes and bounds will not be reformed in equity so as to make the north line coincide with the south line of a certain street, even though subsequent purchasers from the grantee may have understood that the land they were buying had such street line for its northern boundary, where there is no clear proof that the original grantor and grantee had that understanding when the deed was made.

APPEAL from the Circuit Court of Williamson county; the Hon. RICHARD S. FARRAND, Judge, presiding.

WILLIAM H. WARDER, for appellants.

A. J. KIMMEL, and GEORGE SAWYER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellees (hereinafter called complainants) filed their bill in the circuit court of Williamson county November 26, 1910, asking that Minerva E. Elliott be ordered to correct the description in a certain deed executed by her and her husband to Mrs. L. F. Gent, dated July 4, 1896. By an amendment the Marion Building and Loan Association was made a party defendant, and by further amendment setting up the death of Minerva E. Elliott, intestate, Samuel Elliott and W. B. Elliott, her sons and only heirs-at-law, were made parties defendant.

The bill alleges that W. H. Warder was the owner of and conveyed to Minerva E. Elliott a piece of land situate in the south-east quarter of the south-east quarter of sec-

tion 13, township 9, south, range 2, east, in Williamson
county, and described as beginning two rods south of the
south-west corner of the said tract and running east three
chains and twenty-five links; thence north six chains and
seventy-five links; thence west three chains and twenty-five
links; thence south six chains and seventy-five links to the
place of beginning, except 100 feet off the east side; that
July 4, 1896, J. J. and Minerva E. Elliott conveyed a part
of said land to Mrs. L. F. Gent, described as follows: Be-
ginning 317 feet north and 15 feet east of the south-west
corner of the south-east quarter of the south-east quarter
of section 13, township 9, south, range 2, east, in William-
son county; running thence east 100 feet; thence north
100 feet; thence west 100 feet; thence south 100 feet to
the place of beginning. Complainants by *mesne* convey-
ances are the present owners of said last described tract.
They aver that the beginning point in the deed from Mi-
nerva E. Elliott and husband to Mrs. L. F. Gent should
have been a point 302 feet north and 15 feet east of the
south-west corner of the south-east quarter of the south-
east quarter of section 13, township 9, south, range 2, east,
instead of 317 feet north and 15 feet east of said corner
before described, and that the latter point for beginning
was arrived at or adopted by a mistake of the parties; that
such mistake runs through the whole series of transfers
from Minerva E. Elliott and husband to and including the
several deeds to complainants; that no persons other than
complainants and defendants have any interest in said land
the description of which is sought to be corrected; that
complainants and the parties through whom they claim title
have been in possession of said piece of land until within
the last two years; that they did not know Minerva E. El-
liott claimed any part of said piece of land nor that there
had been any mistake in the description of the land con-
veyed in the deed from her and her husband to Mrs. L. F.
Gent, and the subsequent conveyances in the chain of title,

until within the last two years, when said Minerva E. Elliott caused a small house to be erected upon the premises, which she claimed to own; that quit-claim deeds containing a true and correct description of the land claimed by the complainants were presented to Minerva E. Elliott, but that she would not sign the same when requested so to do. The prayer of the bill is that Minerva E. Elliott be ordered to execute to complainants separate deeds conveying to them the strip of land claimed by her and which was intended to be conveyed by her to Mrs. L. F. Gent on July 4, 1896, but which, by mistake of the parties in establishing the correct point for beginning, was omitted, and has since been omitted in subsequent deeds down to and including the several deeds to complainants.

The answer of Minerva E. Elliott, filed July 12, 1911, set up the conveyance to her by W. H. Warder, also the deed from her and her husband to Mrs. L. F. Gent, and denied that any mistake was made in the description of the land conveyed by her to said Mrs. L. F. Gent; alleged she was in possession of the strip of ground in controversy, upon which she had built a small house, and denied complainants' right to the relief sought in their bill.

The answer of the Marion Building and Loan Association alleges that J. J. Elliott and Minerva E. Elliott, on May 31, 1909, then being in possession of the disputed tract of land, mortgaged the same to said Marion Building and Loan Association to secure a loan of $100 thereon; that the said mortgage is recorded in mortgage record 11, page 400, and that said association had no notice or knowledge of any error in any deed as mentioned in complainants' bill, and denies that complainants are entitled to any relief as against said defendant.

The cause was referred to the master in chancery to take testimony, and upon the master's report of the testimony the cause was heard and a decree rendered April 19, 1913, finding that the allegations of the bill were sustained

by the proof and granting the relief prayed, except that the mortgage of the building and loan association was sustained as a valid lien. By appeal the record is brought to this court for review.

The land conveyed by W. H. Warder to Mrs. Elliott was never platted into lots by the owner. Its north boundary was 10½ feet north of the south line of West Main street, one of the streets of the city of Marion. Mrs. Elliott conveyed the land in small parcels to different persons from time to time, describing the premises conveyed each time by metes and bounds. The first parcel of the entire tract conveyed was a lot 100 feet square, commencing 317 feet north and 15 feet east of the south-west corner of the forty; running thence east 100 feet; thence north 100 feet; thence west 100 feet; thence south 100 feet to the place of beginning. The length of the tract, north and south, conveyed by Warder to Mrs. Elliott, in the forty acres described, was 412½ feet. The south line of the parcel conveyed by Mrs. Elliott to Mrs. Gent was located 317 feet north of Mrs. Elliott's south line, and the north line of the Gent lot, as described in the deed, was 417 feet north of said south line of the forty-acre tract, or 4½ feet north of Mrs. Elliott's north line as located in the conveyance to her by Warder. It is clear that to this extent there was a mistake in the deed to Mrs. Gent, and Mrs. Elliott did not deny this. She testified she intended the north line of the land conveyed to her by Warder to be the north line of the tract conveyed by her to Mrs. Gent. According to her testimony the south line of Mrs. Gent's lot should have been 312½ feet north of the south-west corner of the forty-acre tract instead of 317 feet. Mrs. Elliott by subsequent deeds conveyed to Thomas Elliott a lot 87 feet wide north and south, immediately next to the south line of the forty acres; to C. A. Gent a lot 30 feet wide north and south, next to the lot conveyed to Elliott; to John M. Cline a lot 100 feet north and south, next to the lot conveyed to Gent; and to

E. J. Gill a lot 85 feet north and south, next to the lot conveyed to Cline. These conveyances include the land from the south line of the forty acres to a point 302 feet north of said south line, leaving 110½ feet between the north line of the Cline lot and the north line of the tract described in the deed from Warder to Mrs. Elliott, which north line, as we have seen, was 10½ feet north of the south line of West Main street.

The deed to Mrs. Gent for the 100 feet, the south line of which was described as 317 feet north of the south-west corner of the forty, was made before any of the other conveyances mentioned. From the date of the deed to Mrs. Gent for the 100 feet square to about two years before the filing of the bill in this case,—a period of about thirteen years,—the Elliotts were not in possession of the disputed strip. About two years before the bill was filed they took possession and built a small house upon it. Previous to their taking possession of the strip the evidence as to the possession and claim of ownership is not very certain or satisfactory. The land was never platted by the owner, but in 1907 the tax authorities caused it to be surveyed and platted according to the conveyances made, for the purpose of taxation. None of the conveyances covered the disputed strip. It is not denied that there was a mutual mistake in not locating the south line of the lot conveyed to Mrs. Gent by Mrs. Elliott 4½ feet further south, or that it should have been 312½ feet north of the south line instead of 317 feet. Complainants contend it was intended by both parties to the conveyance from Mrs. Elliott to Mrs. Gent to convey to Mrs. Gent 100 feet square south of the south line of West Main street. This would have required the starting point in the description to have been 302 feet north of the south line of the forty. Mrs. Elliott testified it was the intention of the parties that the north line of the Gent lot should be the north line as described in the deed from Warder to her, which was 10½ feet north of the south line

of the street. Mrs. Gent, the grantee, did not testify, but her husband testified he negotiated the purchase of the lot from Mrs. Elliott; that he did not know from what point the lot was to extend 100 feet south; that the deed described it as commencing 317 feet north of the south-west corner of the forty; that he was getting 100 feet but gave no consideration as to whether it was exclusive of West Main street; that there was no conversation with reference to the street or street line; that he paid $75 for the land and it was sold to Brice Holland for $65. Holland testified that when he bought the tract from Mrs. Gent he understood he was getting 100 feet square south of West Main street, but he does not say Mrs. Gent understood it the same way. He testified he had no knowledge of the deed between Mrs. Elliott and Mrs. Gent or what was intended to be conveyed by Mrs. Elliott to Mrs. Gent. He sold the land, and it is now owned by different parties in five separate tracts. Other witnesses who now own or have owned parts of the tract 100 feet square testified as to their understanding of how far south of West Main street it extended and to certain acts of possession or use of the disputed strip by the owners of the 100 feet. There does not appear, however, to have been any continuous use or possession of it before the Elliotts built upon it, in 1909.

We do not think there is any such proof of a mutual mistake in the deed from Mrs. Elliott to Mrs. Gent as would authorize a reformation of the deed except as to the 4½ feet. As we read the evidence it is far from clear that there was any mistake made in that conveyance except placing the north line 4½ feet north of the north line of the tract conveyed to Mrs. Elliott by Warder. West Main street appears to have never been platted as a street by the property owners. As we understand from the record, it has existed and been traveled and used as a street since about 1869. The north line of the land conveyed to Mrs. Elliott by Warder had been established by conveyances prior

to the time there was any West Main street, and after that street came into existence the same north boundary was recognized by conveyances down to the conveyance from Warder to Mrs. Elliott. No reason appears why the deed to the fee of the 10½ feet off the south side of the street was not a good conveyance, subject to the public easement for the purposes of a street. It is by no means clear from the testimony that Mrs. Elliott intended to convey to Mrs. Gent, and that Mrs. Gent understood that she was buying, 100 feet south of the south line of West Main street. It is true that for a period of about thirteen years Mrs. Elliott asserted no claim to the disputed strip and did not take possession of it until after the survey was made for the purposes of taxation. While this is a circumstance worthy of consideration it is not conclusive in favor of complainants, nor is it when considered in connection with all the other evidence in the record. To justify the relief prayed, the evidence must be of very strong and convincing character that there was a mutual mistake by the parties in the respect alleged. (*Hunter v. Bilyeu*, 30 Ill. 228; *Shay v. Pettes*, 35 id. 360; *McDonald v. Starkey*, 42 id. 442; *Stanley v. Marshall*, 206 id. 20.) The fact that owners of the land who became such after the conveyance to Mrs. Gent thought they were acquiring land extending 100 feet south of West Main street would not authorize a reformation of the deed from Mrs. Elliott to Mrs. Gent, in the absence of clear and convincing proof that they understood and intended the deed to convey 100 feet south of West Main street.

It is conceded complainants are entitled to relief as to the 4½ feet immediately north of the 10½ foot strip in dispute, but they were not entitled, under the evidence, to the relief prayed as to the 10½ foot strip. The decree will therefore be reversed and the cause remanded, with leave to complainants, if they so desire, to amend their bill by praying for reformation of the deed from Mrs. Elliott

to Mrs. Gent and subsequent conveyances, so as to make the beginning point of the tract conveyed by Mrs. Elliott to Mrs. Gent 312½ feet north of the south-west corner of the south-east quarter of the south-east quarter of said section 13, instead of 317 feet north of said corner.

*. Reversed and remanded.*