**Elmer L. Legendre and Esther A. Legendre, Plaintiffs-Counterdefendants-Appellees, v. Warren H. Harris and Eunice M. Harris, Defendants-Counterplaintiffs-Appellants.**

**Gen. No. 69–89.**

Fifth District.

June 17, 1970.

Rehearing denied July 17, 1970.

Turner, Holder & Ackerman, of Belleville, for appellants.

Dixon & McDonnell, of Belleville (Joseph B. McDonnell, of counsel), for appellees.

MORAN, P. J.

Plaintiffs-counterdefendants, hereinafter referred to as appellees, filed their suit in equity praying for a mandatory injunction to restrain and enjoin the defendants-counterplaintiffs, hereinafter referred to as appellants, from maintaining a garage and dog pen upon their lot 284. The appellants filed their answer and counterclaim that a fence located on appellees' lot 284 was the true line between the properties and praying that their deed be reformed accordingly.

The court denied relief to the appellants and entered a decree in favor of the appellees enjoining the appellants from the use and enjoyment of that portion of lot 284 existing between the fence and the true boundary line of said lot. The appellants were further ordered to

remove the dog pen and to cease the planting and cultivation of all produce on said strip, and to refrain from the use of said strip for any purpose whatever. The appellees were further authorized to remove the fence and to construct any fence or enclosure within the boundary line between lots 283 and 284. The prayer of appellees' complaint praying for removal of the garage encroaching on appellees' lot was denied on the ground "that the aforesaid garage is of brick construction and that the benefit to be gained by appellees by requiring its removal is out of proportion to the probable expense and inconvenience attendant upon its removal, and that the encroachment of said garage upon appellees' lot 284 is relatively slight." Defendants-counterplaintiffs appeal.

The record discloses that Nick Hulliung and his wife were the owners of lots 274, 283, 284 and 293 of Fikes Addition to the Town now City of Mascoutah until February 21, 1952, when they conveyed lots 274 and 283 by warranty deed to George and Katie Lehr, who conveyed those lots to appellants on August 26, 1963. On February 26, 1964, Nick Hulliung and his wife conveyed lots 284 and 293 to appellees. The survey of lots 283 and 284 accepted by both parties shows that these lots are immediately adjoining and that a fence used by appellees to enclose their horse pasture extends from 5.3 to 7 feet onto lot 284 and appellants' brick garage extends 5.6 feet onto lot 284. The disputed strip of property lies between this fence and the boundary line as surveyed according to the recorded plat and deeds of the respective parties.

Elmer Legendre testified that on February 26, 1964, he purchased lot 284 along with three other lots in Mascoutah from Nick Hulliung for use as a horse pasture. At that time and for many years prior to that, there was a fence somewhere near the property line separat-

ing lot 284 from lot 283. There is also a brick garage on lot 283 next to the fence. Mr. Hulliung told him that that was his fence when he bought the property. There were some fruit trees between the fence and the surveyed boundary line that were planted by prior owners and also some shrubbery planted by appellants. He also testified that he never indicated to Mr. Harris either before or after he bought the property that the fence was the proper dividing or boundary line between their lots. He further stated that he had no personal knowledge of exactly where the true boundary line was. When Nick Hulliung told him that the fence was his when he bought the property, he did not indicate that any part of appellants' garage was his. He knew his deed called for four complete lots. He had rented those lots several years prior to 1964 and he was aware of the garage, the fence and the fruit trees. The survey and exhibits show that the fence is of four-inch square wire mesh in need of repair and is not in a straight line. Appellant testified that he wanted to rebuild the fence, but he did not know where the proper boundary line was.

Mr. Harris testified that he purchased the property from Mr. and Mrs. Lehr in August of 1963 and on several occasions he inspected the property and saw the fence and garage. He did not have any survey made prior to the purchase or at any time up to the institution of this lawsuit. After he purchased the property in 1963, he had several discussions with Elmer Legendre over the back fence and they referred to the fence as the one that divided their property. Thereafter, some dissention arose and Legendre indicated to the Harrises on several occasions that "they should stay on their side of the fence and he would stay on his." Mr. Harris testified that they have been using the property up to the fence since August, 1963, for various purposes such as gardening, maintaining a dog pen and harvesting the fruit from the fruit trees.

Eunice Harris testified that the fence runs approximately one foot behind their garage but is not in a straight line. Mr. Legendre repeatedly told them "you maintain your side of the fence and I will maintain mine." At no time before making the survey did Mr. Legendre make any claim to the strip of land between the fence and the true boundary line. Up until that time, they assumed that the fence was the line. She testified that they were told when they purchased this property that the lot went up to the fence.

Appellants argue that courts of equity will reform a deed on the ground of mistake of fact, mutual and common to the parties and in existence at the time of the execution of the instrument, showing that the parties intended to say a certain thing and by mistake expressed another, when satisfactory evidence of mistake is presented, leaving no reasonable doubt as to the mutual intention of the parties, relying heavily on Korosic v. Pearson, 377 Ill 413, 36 NE2d 744. In that case, Steve and Edward Korosic were joint owners of a certain platted lot. They agreed to divide the property evenly and each constructed a home and other improvements on his half. They built a joint driveway along what they mutually assumed and believed to be the true dividing line between them which they had agreed upon. Thereafter, they decided to make appropriate deeds for their respective halves of the property and consulted a real estate agent for the purpose of preparing these deeds. Edward then sold his half and his purchasers entered into a contract to sell the property to a third party. A survey was made and it was disclosed that the deeds dividing the property between the brothers had ignored a thirty-three foot strip of platted unused roadway along the north side of the property, so that the boundary line as described in the deeds was 16½ feet north of the line previously supposed to have been the dividing

line. Edward Korosic had built his house 2.4 feet over this described line and had built a chicken house, dug a well and planted trees within the 16½ foot strip. The Master found that it was clear from the record that it was the intention of the parties that each have one-half of the lot and that they believed that they had so arranged it as to create a division along the center line of the driveway which they had previously constructed and the trial court granted reformation of their deeds. Appellants argue strenuously that this case controls the present case, relying especially on the language in the opinion that:

> "Before they bought this property appellants were confronted with such monuments as ordinarily delineate boundary lines and were bound to take notice of them. The driveway, the row of trees, the chicken house and even a part of appellee's house itself were in full view and could not in good faith be ignored. Appellants had ample opportunity to observe these physical facts, to make inquiry of appellee or others, to require a survey or look for surveyor's monuments. No master in chancery or chancellor could be expected to believe that appellants in good faith intended to buy or actually thought they were buying 2.4 feet off of the north end of appellee's house."

Appellees argue that the present case falls more squarely within the decision of Skinner v. Francisco, 404 Ill 356, 88 NE2d 867, and that the evidence produced by appellants does not approach the standard required for reformation of a deed. In that case, Skinner had purchased from a Mrs. Burns a parcel of land which she had allegedly told him was bounded on the west by a hedge fence. He entered into possession and cultivated the land to the hedge fence for ten years at which time

Mrs. Burns sold the adjoining tract on the west to Francisco. It developed that the hedge fence was, in fact, thirty-three feet on Francisco's side of the boundary line. Skinner filed suit claiming that the hedge fence was the true boundary and praying that title be confirmed in him to the hedge. The court denied this relief and held that although a boundary line may, under certain circumstances, be permanently and irrevocably established by parol agreement of adjoining owners, if the boundary line is not in dispute and the intention of the parties is merely to determine the exact or true line and in so doing agree upon an erroneous line by accident or mistake, the agreement will not be binding and the line will not be established merely because of the agreement previously entered into between the parties. In such a case there is merely a failure to find the true line through accident or mistake and not an agreement to adopt an unascertained or disputed line. The court went on to note that there was no uncertainty in the deed that could not have been removed by a survey or the running of a simple instrument, and that Skinner understood that he was purchasing 80 acres of ground, which was exactly what he bargained for and received.

We believe that the present case is distinguishable from Korosic v. Pearson, supra, and is more appropriately controlled by Skinner v. Francisco, supra. In Korosic, the evidence was conclusive that at the time the lot was divided by deed the brothers had agreed upon the boundary line as evidenced by the driveway, but due to a mutual mistake on their part, the deeds failed to recite the boundary line as they had agreed. In the present case, the only evidence of the intention of any of the parties is that Mr. and Mrs. Harris expected that they were purchasing property up to the fence. Mrs. Harris testified that they were told when they bought the property that their lot extended to the fence. However, Nick

Hulliung and Mr. and Mrs. Lehr are now deceased and there was no testimony as to the intent of those parties at the time Hulliung conveyed lot 283 in 1952 to the Lehrs, aside from inferences which might be drawn from the presence of the fence and the garage.

 In analogous circumstances in Perry v. Elliott, 261 Ill 553, 104 NE 196, the court held that a prior conveyance to plaintiff's predecessor in title which failed to include an area allegedly meant to be included would not be reformed to include the disputed tract, even though defendant grantor had over a period of thirteen years asserted no claim to the disputed strip, and had not taken possession of it until after a county survey was made for taxation purposes. The court said that these factors were merely circumstances to be taken into consideration but were not conclusive in favor of reformation, particularly where it was far from clear in light of other evidence that any mistake had been made in the prior conveyance. The court stated:

> "To justify the relief prayed, the evidence must be of very strong and convincing character that there was a mutual mistake by the parties in the respect alleged. (Citing cases.) The fact that owners of land who became such after the conveyance to Mrs. Gent thought they were acquiring land extending one hundred feet south of West Main Street would not authorize a reformation of the deed from Mrs. Elliott to Mrs. Gent in the absence of clear and convincing proof that they understood and intended the deed to convey one hundred feet south of West Main Street."

Similarly, the fact that appellants thought they were acquiring property up to the fence is not sufficient to authorize reformation of their deed to include that property in the absence of clear and convincing evidence

that their predecessors in title had intended to convey that land up to the fence. Appellants assert they have shown mutual mistake on the part of all parties by the fact that appellees have assumed the fence to be the boundary line and that Nick Hulliung told appellees that the fence was the line when he said that the fence was his (Legendre's). However, Legendre denied ever referring to the fence as the boundary line. He testified that he did not know where the line was, although he had been told that the fence was on his property. We believe that this evidence falls far short of that clear and convincing evidence required to demonstrate that Nick Hulliung and the Lehrs intended to convey property up to the fence when they conveyed lot 283, and that their deeds failed to recite this intention properly because of a mutual mistake of fact.

██ This case is similar to Skinner v. Francisco, supra, in that, prior to this lawsuit, there was never a dispute as to the true boundary line and at best, the adjoining landowners merely erroneously assumed that the fence was the true line. Appellants' deed was to convey to them lot 283, which according to the recorded plat adjoins lot 284 on the line as surveyed by the parties, and not on the fence line as asserted by appellants. The appellants bargained for lot 283 and this is what they received. They could readily have ascertained where the true boundary was but they took no steps to do so. In such a case where the true boundary is not in dispute or uncertain, an agreement between the parties, express or implied, is not binding so as to alter the description in their respective deeds. Skinner v. Francisco, supra.

Appellants finally argue that the decree is inconsistent in that it restrains appellants from use of the disputed strip, but permits the maintenance of the garage as it now exists without reforming their deed to include the property on which it rests, and thus places a cloud upon their title. The trial court found that the garage was

of brick construction and that the expense and inconvenience attendant upon its removal would be out of proportion to the benefit to be gained by appellees in that its encroachment upon appellees' lot is relatively slight. Thus, it denied that portion of plaintiffs' complaint asking that the garage be removed. Appellees do not dispute this disposition of the case and recite that their sole objective in instituting this action was to confirm their title to the disputed strip. In fact, appellees had waived that portion of their prayer asking for removal of the garage.

■■ We believe that the findings in the decree of the trial court are consistent with each other and with the law of Illinois that where the court declines to compel a removal of an encroachment, it will leave the complaining party to his remedy at law for damages, if he so desires. Pradelt v. Lewis, 297 Ill 374, 130 NE 785. In any event, when Nick Hulliung built a portion of his garage over the boundary line between lots 283 and 284 and subsequently transferred one of those lots, his grantee took that lot subject to, or benefited by an easement by necessary implication in favor of the encroaching garage. ILP, Easements, § 17; Koubenec v. Moore, 399 Ill 620, 78 NE2d 234; Gilbert v. Chicago Title & Trust Co., 7 Ill2d 496, 131 NE2d 1; People ex rel. Helgeson v. Hackler, 21 Ill2d 267, 171 NE2d 599; Mueller v. Keller, 18 Ill2d 334, 164 NE2d 68. In fact, appellees have offered to "recognize a permanent easement in favor of defendants and their successors in title over that portion of plaintiffs' lot onto which the garage extends, so long as the true boundary line is recognized." (Appellees' Brief, page 14.)

The decree of the trial court is therefore affirmed.

Decree affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.